# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 25-682 consolidated with 25-683

RHONDA FOREMAN

VERSUS

JASON HIGGINS, KINGDOM ELECTRIC LLC, AND
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2021-2889 C/W 2021-3030
HONORABLE DAVID M. SMITH, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**GUY E. BRADBERRY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Van H. Kyzar, Guy E. Bradberry, and Clayton Davis, Judges.

**AFFIRMED.**

John W. Penny, Jr.
C. Shannon Hardy
Penny & Hardy
P.O. Box 2187
Lafayette, LA 70502
(337) 231-1955
COUNSEL FOR DEFENDANT/APPELLEE:
    Kingdom Electric, LLC

David O. Way
Oliver & Way
P.O. Box 82447
Lafayette, LA 70598-2447
(337) 988-3500
COUNSEL FOR DEFENDANT/APPELLEE:
    Jason Higgins

Joseph T. Puhekker
Leah B. Guilbeau & Associates
4023 Ambassador Caffery Parkway
Caffery Plaza, Suite 100
Lafayette, LA 70503
(337) 988-7240
COUNSEL FOR DEFENDANTS/APPELLEES:
    Kingdom Electric, LLC
    State Farm Mutual Automobile Insurance Company

Derriel C. McCorvey
McCorvey Law, L.L.C.
102 Versailles Boulevard, Suite 620
P.O. Box 2473
Lafayette, LA 70502
(337) 291-2431
COUNSEL FOR PLAINTIFF/APPELLANT:
    Rhonda Foreman

Robert B. Brahan, Jr.
Broussard & David, LLC
P.O. Box 3524
Lafayette, LA 70502
(337) 233-2323
COUNSEL FOR PLAINTIFF/APPELLEE:
    Skylar Stoute

**Kaitlyn Bourg**
**Proteous, Hainkel & Johnson, L.L.P.**
**200 Beaullieu Drive, Building 3A**
**Lafayette, LA 70508**
**(337) 291-2440**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **State Farm Fire & Casualty Company**

**Alexandria L. LeBlanc**
**Haik, Minvielle, Grubbs & D'Albor**
**1101 East Admiral Doyle Drive, Suite 503**
**New Iberia, LA 70560**
**(337) 365-5486**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
     **Park Place Surgery Center**
     **Lafayette Surgical Specialty Hospital**

**BRADBERRY, Judge.**

This appeal involves the dismissal of claims against Kingdom Electric, LLC, by way of two separate summary judgments. In the first summary judgment, the trial court ruled that Kingdom's employee, Jason Higgins, was not in the course and scope of employment when he was involved in a vehicular accident with Rhonda Foreman and Skylar Stoute. In the second summary judgment, the trial court determined that Kingdom was not independently negligent in hiring, training, supervising, retaining, and dispatching Mr. Higgins. Ms. Foreman appeals both the denial of her motion to reconsider the first summary judgment and the granting of the second motion for summary judgment. Ms. Stoute did not file an appeal from either summary judgment.

### FACTS

On July 6, 2020, Rhonda Foreman and Skylar Stoute were involved in a vehicular crash with Jason Higgins. Both ladies were in their own vehicles. At the time of the accident, Mr. Higgins was employed by Kingdom, an electrical service company, and driving one of its vans. Mr. Higgins' van rear-ended Ms. Stoute's car, which then rear-ended Ms. Foreman's car. Ms. Foreman and Ms. Stoute each filed suit separately against Mr. Higgins, Kingdom, and Kingdom's insurer, State Farm Mutual Automobile Insurance Company. Subsequently the petitions were amended to add Evanston Insurance Company, also an insurer of Kingdom, as a defendant.

Both Plaintiffs argued that Mr. Higgins was in the course and scope of his employment with Kingdom when the accident occurred. Ms. Foreman also originally alleged that Kingdom negligently entrusted its vehicle to Mr. Higgins. Ms. Foreman amended her petition to add a claim that Kingdom was negligent in hiring,

training, supervising, retaining, and dispatching Mr. Higgins. On February 6, 2023, the cases of the two Plaintiffs were consolidated.

On September 23, 2024, Kingdom filed a motion for summary judgment. It claimed that Mr. Higgins was not in the course and scope of employment at the time of the accident. Kingdom also claimed that it was not negligent in causing the accident, in entrustment of the vehicle to Mr. Higgins, nor in failing to provide safety training or education to Mr. Higgins.

A hearing on the motion for summary judgment was held on December 2, 2024. The trial court granted the motion as to the issue of course and scope but denied the motion as to the allegations of independent acts of negligent entrustment of a vehicle and negligent hiring, training, supervising, retaining, and dispatching.

Kingdom filed a second motion for summary judgment on February 21, 2025, once again seeking judgment in its favor that it was not negligent in causing the accident, in its entrustment of the vehicle to Mr. Higgins, and in failing to provide safety training or education on driving to Mr. Higgins. Ms. Foreman filed a motion for reconsideration on February 28, 2025, asking that the trial court reconsider its ruling on Kingdom's first motion for summary judgment.

A hearing on these issues was held on March 24, 2025. The court denied Ms. Foreman's motion for reconsideration and granted Kingdom's second motion for summary judgment. Judgment was signed on April 4, 2025, dismissing all claims against Kingdom and dismissing it as a defendant. Ms. Foreman sought supervisory writs with this court, which we denied finding that the writ application should be considered a timely motion for appeal since it was a final, appealable judgment. After remand to the trial court, Ms. Foreman filed the present appeal.

**MOTION FOR RECONSIDERATION**

Ms. Foreman first claims that the trial court erred in denying her motion for reconsideration based upon her allegations of new evidence that would create a genuine issue of material fact as to whether Mr. Higgins was in the course and scope of employment at the time of the accident. Ms. Foreman alleges that there was evidence she overlooked at the last hearing, which she sought to introduce by way of the motion for reconsideration. Attached to her motion for reconsideration were responses to requests for admissions made by Kingdom on December 14, 2021, in which Kingdom admitted that Mr. Higgins was in the course and scope of employment at the time of the accident. Kingdom also admitted that it knew of Mr. Higgins' destination at the time of the crash and knew where he was coming from.

In *Koerner v. Certain Underwriters at Lloyd's London*, 24-134, pp. 1–2 (La. 3/19/24), 381 So.3d 702, 702–703, the supreme court noted that prior to final judgment, a trial court may, at its discretion and on its own motion, change the result of interlocutory rulings it finds to be erroneous and held that "[a]lthough we have never formally recognized whether a motion for reconsideration was available in cases of interlocutory judgments, we have recognized a party may ask the trial court to exercise its discretion to reconsider an interlocutory ruling."

In considering the submission of the admissions of fact, we note that La.Code Civ.P. art. 966(B)(5) provides that "[t]he court shall not reconsider or revise the granting of a motion for partial summary judgment on motion of a party who failed to meet the deadlines imposed by the Paragraph, nor shall the court consider any documents filed after those deadlines." Louisiana Code of Civil Procedure 966(B)(2) provides that any documents in opposition to a motion for summary judgment shall be filed "not less than fifteen days prior to the hearing on the motion."

The admissions of fact were not new evidence and were not filed timely in opposition to the motion for summary judgment on the issue of course and scope of employment. We agree with the trial court's decision to not consider this evidence. However, since the first summary judgment was an interlocutory judgment, we will now consider whether the trial court's grant of summary judgment in favor of Kingdom was appropriate on the issue of course and scope since a party is "entitled to seek review of all adverse interlocutory judgments prejudicial to him, in addition to the review of the final judgment." *Reliable Life Ins. Co., Inc. v. Miller*, 56,345, p. 10 (La.App. 2 Cir. 8/27/25), 420 So.3d 773, 780, *writ denied*, 25-1216 (La. 12/9/25), 422 So.3d 297. We will now review Ms. Foreman's claims that the trial court erred in granting summary judgment to Kingdom on the issues of course and scope and the independent allegations of negligence.

## SUMMARY JUDGMENT

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends." La.Code Civ.P. art. 966(A)(2). "[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

In *O'Neal v. Foremost Insurance Co.*, 24-212, p. 4 (La.App. 3 Cir. 6/25/25), 416 So.3d 809, 813, this court explained:

> [T]he burden of producing evidence at the motion hearing is "on the mover, who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent's case." *Schultz v. Guoth*, 10-343, p. 6 (La. 1/19/11), 57 So.3d 1002, 1006. Procedurally, therefore, the court's first task is to

4

determine whether the moving party's motion, memorandum, affidavits, and supporting documents "are sufficient to resolve all material factual issues." *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 28 (La. 7/5/94), 639 So.2d 730, 752. "To satisfy this burden, the mover must meet a strict standard of showing that it is quite clear as to what is the truth and that there has been excluded any real doubt as to the existence of a genuine issue of material fact." *Indus. Sand & Abrasives, Inc. v. Louisville & Nashville R.R. Co.*, 427 So.2d 1152, 1154 (La.1983).

The appellate standard of review on a motion for a summary judgment is de novo. *23rd Psalm Trucking, L.L.C. v. Madison Par. Police Jury*, 24-808 (La. 6/27/25), 413 So.3d 370. "[A]n adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial." La.Code Civ.P. art. 967(B).

## Course and Scope of Employment

At the time of the accident, Mr. Higgins was on his way home from work. Ms. Foreman argues that the fact Mr. Higgins was on his way home from work does not preclude a finding that he was in the course and scope of his employment. Kingdom argues that it is uncontested that Mr. Higgins had clocked out for the day, was not being paid, was not on any mission or errand for Kingdom, was driving home, and simply was not performing any job-related task or duty at the time.

Louisiana Civil Code Article 2320 provides, "Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." For an employer to be vicariously liable for the actions of their employee, the court must determine whether the "damage occasioned" by the employee was in the "course and scope" of his employment duties. *See Orgeron on Behalf of Orgeron v. McDonald*, 93-1353 (La. 7/5/94), 639 So.2d 224. "Generally speaking, an employee's conduct is within the

5

course and scope of his employment if the conduct is of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer." *Id.* at 226–27.

> [A]n employee who is traveling from home to work or returning from work to home is generally not within the course and scope of his employment. Because an employee usually does not begin work until he reaches his employer's premises, his going to and coming from work is generally considered outside the course of his employment unless he has a duty to perform en route. Moreover, an employee's place of residence is a personal decision not directly controlled by the employer, and treating commuting time as part of the determination of course and scope of employment would remove manageable boundaries from the determination.
>
> The going and coming rule applies nicely when the employee has a fixed place of work, so that his traveling back and forth between his home and his fixed place of work is almost never in the course of employment. Not all employees, however, work on the employer's premises or have a fixed place of work. The dispatching of employees to different work locations gives rise to many "shades of gray" in the otherwise "black and white" applications of the going and coming rule. When an employee is required to check in at a certain place and is then dispatched to the work site for that day, he is generally in the course of employment in the travel between the check in place and the work site, but not between home and the check in place. See generally Arthur Larson, Law of Workman's Compensation § 16 (1993). However, when an employee is instructed to report to different work sites which change periodically, without first reporting to a check in place, there are more variations in the determination of course and scope of employment.

*Id.* at 227.

In *Orgeron*, the court held that an employee was within the course and scope of employment for purposes of finding the employer vicariously liable when he was in an automobile accident that injured third parties while driving to a work site when the employer intercepted his trip home and dispatched him to another work site. It explained that "[u]nder the overall circumstances, the risk of harm for any casualty caused by the employee was fairly attributable to the employer" even though the employee was not paid wages or expenses for the trip. *Id.* at 228. The first circuit

recently recognized three exceptions to the coming and going rule in *Awanbor v. Williams*, 25-54 (La.App. 1 Cir. 8/4/25), 418 So.3d 1043, *writ denied*, 25-1124 (La. 11/12/25), 420 So.3d 708.

> [A]n employee may be in the course and scope of employment when traveling to or from work if: the employer provides the transportation; the employer provides wages or expenses for the time the employee spends travelling; or the operation of the vehicle is incidental to or in performance of the employee's responsibility.

*Id*. at 1053, fn 10.

For the employer-provided transportation exception to apply, courts examine whether the employee exercised meaningful control over the employee's commute. Liability is typically found when the employer provided and maintained the vehicle and the transportation method was an incident to the employment agreement. *Winzer v. Richards*, 50,330, p. 9 (La.App. 2 Cir. 1/13/16), 185 So.3d 876, 882.

We do observe that Louisiana courts have held employers liable where employees were driving employer-provided transportation home from work and were involved in accidents. The key factor is whether the employer "interested itself" in the employee's transportation as an incident to the employment agreement. *See Phillips v. EPCO Carbon Dioxide Products, Inc.*, 35,740 (La.App. 2 Cir. 2/27/02), 810 So.2d 1171 (a case in which second circuit considered the question of whether workers' compensation benefits were available and vicarious liability was not at issue). The key distinction is that in tort cases involving third-party injuries, the focus remains on whether the employer has interested itself in the transportation as an incident to employment, but the employee must be acting within the course and scope of employment at the time of the accident to trigger vicarious liability. *Johnson v. Transit Mgmt. of Se. Louisiana, Inc.*, 17-793 (La.App. 4 Cir. 2/28/18), 239 So.3d 973.

The admissions of fact that Ms. Foreman wants us to rely on as creating a genuine issue of material fact are not part of the record before this court, so we cannot consider them in our de novo review of the summary judgment evidence. Therefore, we will review the evidence submitted by the parties when the trial court granted Kingdom's motion for summary judgment finding that Mr. Higgins was not in the course and scope of employment at the time of the accident.

Kingdom hired Mr. Higgins as an electrical technician approximately two weeks before the accident. He explained that one of the benefits was using the company van to travel to and from work. At the time of the accident, he was training with another technician. He would meet the technician at a designated place, leave his van, and ride with the technician to the job. After the last job was completed, he would get dropped off at his van and go home.

The accident occurred around 5:39 pm on his way home. He explained that traffic was flowing when he looked down to see what fell off his console, and when he looked back up, traffic had abruptly stopped. The dash camera had fallen on the floor. He could not stop in time and ran into the car in front of him, which then collided with the car in front of it. Mr. Higgins testified that he was not on the clock at the time of the accident. He further stated that he was on his way to a pharmacy on the way home. Mr. Higgins agreed that he was not allowed to use the van for personal use.

Sean Dore, president, CEO, and one of the owners of Kingdom, testified that Mr. Higgins was not in the course and scope of his employment at the time of the accident. Mr. Dore testified that when Mr. Higgins clocked out and drove home, he was no longer in the course and scope of employment. At the time of the accident, Mr. Higgins was training, so he was only getting paid hourly rate and he was not

8

receiving pay at the time of the accident. Mr. Dore explained that the workers clock in when they get to work, clock out for lunch and then back in when finished, and clock out at the end of the day. The timecard report for July 6, 2020, the day of the accident, specifically shows that Mr. Higgins clocked in at 7:00 am, clocked out for lunch at 1:03 pm and back in at 1:28 pm, and clocked out at the end of the day at 5:14 pm.

Mr. Dore did agree that "his decalled [sic] vehicle is going with" Mr. Higgins when he goes home. Mr. Dore explained that he put the company logo on the side of the van because he wanted to market the brand to the people. He acknowledged that the employees are marketing his brand every day that way.

There is no doubt that at the time of the accident, Mr. Higgins finished with work and headed to a personal errand at a pharmacy on his way home. He had clocked out of work as shown by the timecards. While Kingdom provided transportation to its employees, it did not dictate Mr. Higgins' commute after the route and did not allow the vehicle to be used for personal errands. There is no indication that at the time of the accident he was on call. Furthermore, he was specifically not using the vehicle at the time for any jobs. We agree with the trial court that there is no question of fact that Mr. Higgins was not in the course and scope of his employment at the time of the accident.

**Negligent Entrustment, Training, Supervising, Retaining, and Dispatching**

Ms. Foreman also claims that the trial court erred in granting summary judgment on Kingdom's second motion for summary judgment when it previously denied the identical motion on her independent negligence claims against Kingdom. She argues that the second motion was heard and granted on March 24, 2025, with no new evidence or argument presented to the trial court.

9

The denial of an initial motion for summary judgment does not bar a second summary judgment motion under the doctrine of res judicata because such denials are interlocutory judgments that can be revised at any time prior to judgment. *Honor v. Tangipahoa Par. Sch. Bd.*, 13-298 (La.App. 1 Cir. 11/1/13), 136 So.3d 31, *writ denied*, 14-8 (La. 2/28/14), 134 So.3d 1181. "A trial court may grant a re-urged motion for summary judgment, even when no new evidence has been submitted." *Paragon Lofts Condo. Owners Ass'n, Inc. v. Paragon Lofts, L.L.C.*, 09-943, p. 4 (La.App. 4 Cir. 2/10/10), 32 So.3d 303, 306. Louisiana law clearly permits parties to file successive motions for summary judgment on the same issues without presenting new evidence, and trial courts have discretion to grant such motions even after denying earlier ones on identical grounds.

Ms. Foreman argues that there are genuine issues of material fact regarding Kingdom's independent acts of negligence. Ms. Foreman contends that Kingdom was negligent in hiring, training, dispatching, entrusting, and supervising a driver with an active prescription for a controlled dangerous substance on the road in a company vehicle which endangered the public. She argues that testimony indicates that company policies were violated when it placed someone on the road whose use of drugs impaired his driving ability. Ms. Foreman also argues that Mr. Higgins was not provided with any driver training until after the crash and a trier of fact should be able to decide whether this contributed to the crash.

Kingdom argues that it had no reason not to entrust the operation of the van to Mr. Higgins and no reason to provide him with any specific training or education on the operation of the van. Prior to being hired by Kingdom, Mr. Higgins submitted to a drug test on June 17, 2020. Originally, the report indicated that there were opiates, oxycodone, and PCP in his system, but he produced a valid prescription on

June 30, 2020, which rendered the test result negative. Kingdom notes that the drug screen was verified as negative six days before the accident.

"A direct claim against an employer for the torts of an employee based on the employer's alleged negligence in hiring, retaining, or supervising the employee generally is governed by the same duty-risk analysis used for all negligence cases in Louisiana." *Awanbor*, 418 So.3d at 1050. The fundamental basis for all negligence claims in Louisiana is La.Civ.Code art. 2315(A), which provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Actions for negligent hiring, training, dispatching, entrusting, and supervising an employee are standalone, independent claims for an employer's negligence, not simply subsumed through an employer's vicarious liability. *Martin v. Thomas*, 21-1490 (La. 6/29/22), 346 So.3d 238; *Chaisson v. Progressive Ins. Co.*, 21-669 (La.App. 4 Cir. 7/27/22), 345 So.3d 1131. These direct negligence clams exist separately from any respondeat superior liability under La.Civ.Code art. 2320, which makes "[m]asters and employers answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed."

An employer has no obligation to supervise and/or train an employee regarding acts that are outside the course and scope of the employment. *Awanbor*, 418 So.3d 1043. *See also Conner v. Lemelle*, 19-843 (La.App. 3 Cir. 5/13/20), 298 So.3d 361, 370, n. 5, *writ denied*, 20-723 (La. 10/6/20), 302 So.3d 528. However, an employer can still be liable for its own negligent conduct in hiring, training, or entrusting a vehicle if it creates the risk.

"Under the negligent entrustment theory, the lender of a vehicle is not responsible for the negligence of the borrower unless he knew or should have known

11

that the borrower was physically or mentally incompetent to drive." *Duran v. Allmerica Fin. Benefit. Ins. Co.*, 53,615, p. 11 (La.App. 2 Cir. 11/18/20), 306 So.3d 611, 617, *writs denied*, 21-212, 21-202 (La. 4/7/21), 313 So.3d 979, 980. More specifically, the owner of an automobile who knowingly lets an intoxicated driver operate its vehicle is responsible for any harm caused by that driver's incompetent operation of the car. *Darby v. Sentry Ins. Auto. Mut. Co.*, 07-407 (La.App. 1 Cir. 3/23/07), 960 So.2d 226, *writ denied*, 07-638 (La. 3/28/07), 953 So.2d 59. "[A]bsent a reason which would place the owner on notice of the driver's disability or incompetence, there is no duty to make an inquiry into one's driving habits." *Duran*, 306 So.3d at 617.

There is no law that requires employers to provide driver training for employees who operate company vehicles under the circumstances presented in this case. In *Levine v. Nationwide Agribusiness Insurance Co.*, 23-488, 23-489 (La.App. 3 Cir. 3/6/24), 381 So.3d 908, *writ denied*, 24-426 (La. 6/19/24), 386 So.3d 310, liability was imposed on an employer for negligent training and supervision in addition to negligent hiring because the employer failed to conduct a proper background check. The employer contracted the background check to a third party that failed to perform it, which would have revealed six prior accidents and three prior license suspensions.

Sean Dore, owner of Kingdom, stated in his deposition that prior to Mr. Higgins' employment with Kingdom, Mr. Higgins presented a valid driver's license, passed a background check, passed a motor vehicle record report, and a negative drug screen once he presented a valid prescription for medication found in his system. Mr. Dore explained that a post-crash drug test was not performed because Mr. Higgins had just passed the drug test a few weeks prior to the accident. In his

12

deposition, Mr. Higgins testified that he was not taking prescription medication before he went to work on July 6, 2020. He also stated that he had not taken or consumed any prescription medication, alcohol, or other drugs during the entirety of the day leading up to the accident. Mr. Higgins also attested he was never involved in any at-fault accidents before this accident and that he was never arrested for any crime.

Regarding training, Mr. Higgins testified that he was presently taking a defensive driving course offered by his employer. However, he did not have training prior to the accident on July 6. He agreed that a CDL license was not required to work for Kingdom, although he previously had one that had expired. Mr. Dore agreed that Kingdom did not require safe driver training at the time of the accident.

When Mr. Higgins was hired, a proper background check was performed which indicated no issues. His drug test revealed drugs in his system, but he presented a valid prescription. The testing center then found the drug test to be negative. Furthermore, Mr. Higgins testified that he had taken no medications at the time of the accident, and there is no indication that the accident was the result of Mr. Higgins being under the influence of any type of narcotic. Mr. Higgins also presented a valid driver's license and had never been involved in any at-fault accidents when he was hired. The only evidence as to the cause of the accident was that Mr. Higgins reached down to grab the GPS unit that fell on the floor and when he looked up, the cars in front of him were stopped. He was unable to stop in time before hitting the car in front of him.

There is no evidence in the record of any actions that indicate Kingdom was negligent in hiring, training, dispatching, entrusting, and supervising Mr. Higgins.

Kingdom performed all of the appropriate preemployment checks, and there is no evidence that Mr. Higgins could not safely operate the company van.

For the reasons set forth in this opinion, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Rhonda Foreman.

**AFFIRMED.**